IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

DONNA O. EPPS,                          *

          Plaintiff,                    *

vs.                                     *
                                                CASE NO. 3:05-CV-68(CDL)
                                        *
LOUISE WATSON, as Tax
Commissioner of Madison County          *
and Individually, and MADISON
COUNTY, GEORGIA,                        *

          Defendants                    *

_____

O R D E R

     Presently pending before the Court are Defendants' Motion to
Dismiss (Doc. 5) and Plaintiff's motion for leave to file an Amended
Complaint (Doc. 12).  For the reasons set forth below, Defendants'
Motion to Dismiss is granted in part and denied in part, and
Plaintiff's motion for leave to file an Amended Complaint is granted.

MOTION TO AMEND COMPLAINT

     Plaintiff moves to amend her Complaint pursuant to Federal Rule
of Civil Procedure 15(a).[1]  Leave to amend a complaint "shall be
freely given when justice so requires," but a motion to amend may be
denied on a number of grounds, including "undue delay, undue
prejudice to the defendants and futility of the amendment." *Brewer-
Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir.

_____

[1]Plaintiff contends that she is entitled to amend the Complaint as a
matter of course because Defendants have not yet filed an Answer. *See* Fed.
R. Civ. P. 15(a).  However, because an amendment may be barred as futile
even under such circumstances, *see Brewer-Giorgio v. Producers Video, Inc.*,
216 F.3d 1281, 1286 (11th Cir. 2000), it is necessary to determine whether
Plaintiff's amendment is futile.

2000).  Here, Defendants do not contend that there has been undue delay or that they will be prejudiced by the amendment.  Defendants do argue that Plaintiff's amendment will be futile and that her motion to amend should thus be denied.  *See id.* at 1285-86 (finding amendment to be futile because it alleged violation of federal copyright law but plaintiff had not registered the copyright prior to suit—prerequisite to the particular claim in the amendment).  Because the Court concludes that Plaintiff's proposed Amended Complaint does not fail to state a claim upon which relief can be granted, *see infra*, Plaintiff's amendment is not futile.  Therefore, the Court grants Plaintiff's motion to amend her Complaint.

## BACKGROUND ALLEGATIONS

This lawsuit arises from the termination of Plaintiff's employment as a clerk in the Madison County Tax Commissioner's office.  Plaintiff contends that this termination was in violation of the First and Fourteenth Amendments to the United States Constitution and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), and she brought suit under 42 U.S.C. § 1983 ("§ 1983") and the ADEA.

In pertinent part, Plaintiff makes the following allegations in her Complaint and her Amended Complaint:

1.    Plaintiff was employed "by [Madison County] as a clerk in the [Madison County] Tax Commissioner's office" from January 5, 1981 to November 3, 2004.  During this employment, Plaintiff did not have any "decision making role within the department."

2.    Defendant Madison County ("Defendant County") is an employer within the meaning of the ADEA.

2

3.   Defendant County acted as Plaintiff's employer. Defendant County issued the separation notice to Plaintiff, and Defendant County "defines an employee as 'a person appointed to a position in the County government for which he or she is compensated on a full-time or part-time basis.'" Defendant County "ratified, condoned and approved the discriminatory behavior and actions of Defendant Watson."

4.   Plaintiff's supervisor was the Madison County Tax Commissioner. Defendant Watson has held the position of Madison County Tax Commissioner since 1989 and has been Plaintiff's supervisor at all times relevant to this lawsuit.

5.   "As Tax Commissioner, Defendant Watson is a final policy making official for the County with regard to matters coming within the jurisdiction of her Department."

6.   The office of Tax Commissioner was a contested position during the 2004 election.

7.   Plaintiff did not actively support either Tax Commissioner candidate during working hours, but she did allow Defendant Watson's opponent to place campaign signage on her private property during 2004. Since 1988, Plaintiff had a custom and practice of allowing political candidates to place campaign signage on her property. Defendant Watson was aware of this custom and practice but "did not retaliate against the plaintiff for political activism until Defendant Watson had opposition in the 2004 election."

8.   On November 3, 2004, the day after Defendant Watson learned that she had been re-elected to the office of Tax Commissioner, Defendant Watson terminated Plaintiff's employment.

9.    Defendant Watson stated that Plaintiff was "doing a good job."  Her stated reason for Plaintiff's dismissal was a "cold environment."

10.   Plaintiff was 57 years old when she was terminated.  She was replaced by a younger individual.

11.   Defendant Watson's employees are required to be subject to a merit system of employment, and Defendant County has in place a merit system of employment.

12.   Plaintiff requested in writing an appeal of her termination under the Personnel and Drug and Alcohol Policy of Madison County. Her request for an appeal and hearing was denied.

13.   All of Defendants' conduct was done under color of local and state law, and it was "accomplished pursuant to the official policy and custom of the County, or was committed or authorized by officials whose acts can be fairly deemed to be the actions of the County."

14.   Defendant County and Defendant Watson deprived Plaintiff of her "right to freedom of speech as guaranteed by the First Amendment to the United States Constitution and substantive due process as guaranteed by the Fourteenth Amendment."

15.   Defendants' failure and refusal to provide timely pre-deprivation and post-deprivation hearings deprived Plaintiff "of her property without due process of law in violation of the Fourteenth Amendment."

DISCUSSION

Defendants move to dismiss all of Plaintiff's claims, arguing that Plaintiff has failed to state a claim upon which relief can be

4

granted.  *See* Fed. R. Civ. P. 12(b)(6).  In reviewing Defendants'
Motion to Dismiss under Rule 12(b)(6), the Court must view the
Complaint in the light most favorable to Plaintiff and accept
Plaintiff's well-pleaded facts as true.  *Silva v. Bieluch*, 351 F.3d
1045, 1046 (11th Cir. 2003).  Defendants' Motion to Dismiss should be
granted if "it appears beyond doubt that [Plaintiff] can prove no set
of facts that would entitle [her] to relief."  *Terry v. Cook*, 866
F.2d 373, 375 (11th Cir. 1989).

*1. Claims Against Watson in her Individual Capacity*[2]

Plaintiff makes several claims under § 1983 against Defendant
Watson in her individual capacity, and Defendant Watson argues that
she is entitled to qualified immunity on these claims.  To make a
case against Defendant Watson under § 1983, Plaintiff must show that
Defendant Watson, under color of state law, deprived Plaintiff of a
right, privilege, or immunity secured by the Constitution or a
federal law.  *See* 42 U.S.C. § 1983.  However, Defendant Watson is
entitled to qualified immunity on these claims if she was acting
within the scope of her discretionary authority and her conduct did
not violate clearly established law.  *See Hope v. Pelzer*, 536 U.S.
730, 739 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
Here, Plaintiff does not dispute that Defendant Watson was acting
within the scope of her discretionary authority when she made the

---

[2]To the extent that Plaintiff attempts to assert an ADEA claim against
Defendant Watson in her individual capacity, that claim is dismissed
because Defendant Watson in her individual capacity is not an "employer"
within the meaning of the ADEA.  *See Smith v. Lomax*, 45 F.3d 402, 403 n.4
(11th Cir. 1995); *see also Mason v. Stallings*, 82 F.3d 1007, 1009 (11th
Cir. 1996) (noting that there is no individual liability under ADEA and
that public official is only considered agent of government when he is
working in his official capacity).

employment decision at issue.  Therefore, the remaining question is whether Plaintiff has alleged facts which, if proved, would support a finding that Defendant Watson's conduct violated clearly established law.

When, as here, a defendant asserts qualified immunity in a Rule 12(b)(6) motion, "the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 441 F.3d 1287, 1302 (11th Cir. 2006); *see also Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1327 (11th Cir. 2003).[3]  To determine whether qualified immunity applies, the Court must first determine whether, taken in the light most favorable to Plaintiff, the facts alleged show that Defendant Watson's conduct violated a constitutional or statutory right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If this question is answered in the negative, there is no need for further inquiry.  *Id.*

---

[3]A heightened pleading standard applies in cases involving individual government officials that can raise qualified immunity as a defense.  *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1368 (11th Cir. 1998).  Although Plaintiff contends that the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) struck down the heightened pleading requirement in all § 1983 cases, the Supreme Court in *Leatherman* specifically did not consider whether "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Leatherman*, 507 U.S. at 166-67.  The Eleventh Circuit has retained a heightened pleading standard in § 1983 cases involving individuals that can raise qualified immunity as a defense.  *GJR Invs., Inc.*, 132 F.3d at 1368.  This heightened pleading requires a complaint to "allege the relevant facts 'with some specificity.'" *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *GJR Invs., Inc.*, 132 F.3d at 1367).  The point of this requirement is to allow the district court to determine whether those facts, if proved, will overcome the defense of qualified immunity.  *Id.*  A court may accept well-pleaded facts and reasonable inferences drawn from those facts, but a complaint that contains only vague and conclusory allegations should be dismissed.

However, if the Complaint alleges violation of a constitutional or statutory right, the Court must then determine whether the right was clearly established at the time of Defendant Watson's conduct. *Id.* A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739; *accord Saucier*, 533 U.S. at 202; *see also Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").  The unlawfulness of the action must be apparent in light of pre-existing law, but there is no requirement that the very action in question has been previously held unlawful. *Hope*, 536 U.S. at 739.

In this case, Plaintiff alleges that Defendant Watson violated her First Amendment rights, her substantive due process rights, and her procedural due process rights.

*a. First Amendment Claims*

Plaintiff claims that she was terminated for supporting Defendant Watson's opponent during the 2004 election.  Perhaps because Plaintiff couched this claim as a violation of her right to "freedom of speech," Defendants contend that this claim is appropriately analyzed as a freedom of speech claim and that Plaintiff's speech is not protected. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (setting forth balancing test for evaluating public employee free speech claims); *see also Connick v. Myers*, 461 U.S. 138, 146 (1983) (establishing as threshold to *Pickering* test requirement that employee's speech be "fairly characterized as constituting speech on a matter of public concern").  Specifically,

Defendants point to *Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003), which holds that "bare statements of support for a candidate"—such as Plaintiff's yard signs—are not the "kind of speech" that require application of the *Pickering* analysis because they merely indicate political affiliation and do not constitute speech on an issue of public concern surrounding the campaign. *See also Cutliffe v. Cochran*, 117 F.3d 1353, 1358 (11th Cir. 1997) (noting that political activity involving nothing more than bare statements of support for candidate simply conveys political affiliation). However, in light of this characterization in *Silva* and *Cutliffe*, even if Plaintiff's Complaint does not adequately allege a violation of her right to freedom of speech, it can fairly be read to allege that she was terminated for her political

affiliation with Defendant Watson's opponent—a violation of Plaintiff's First Amendment right to freedom of association.[4,5]

In general, public employment may not be conditioned upon political affiliation to a party or individual. *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989); *see also Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980). There is an exception to this rule: employment *may* be conditioned on political affiliation if the employer can show that political affiliation is an appropriate

---

[4]Defendants contend that Plaintiff has not met the heightened pleading requirement with regard to her First Amendment claim. *See Dalrymple*, 334 F.3d at 996. The Court disagrees. Plaintiff alleged (1) that she allowed Defendant Watson's opponent to place a campaign sign on her property during 2004, (2) that Defendant Watson knew of Plaintiff's practice of allowing candidates to place campaign signs on her property, (3) that Defendant Watson had been unopposed in elections prior to 2004, and (4) that the day after Defendant Watson learned that she had been re-elected in 2004, she fired Plaintiff although she stated that Plaintiff was doing a good job. A reasonable inference from these allegations is that Defendant Watson knew about Plaintiff's support of her opponent during the 2004 election and fired her for it. Although Plaintiff labels it a "free speech" claim, these facts clearly allege a violation of the related First Amendment right to freedom of association—particularly given *Silva*, 351 F.3d at 1047, a case cited by Defendants which found that "speech" similar to Plaintiff's amounted to a manifestation of political affiliation. In *Silva*, the Eleventh Circuit did not reach the plaintiffs' freedom of association claims because those plaintiffs were deputy sheriffs and could, under the law of the Circuit, be fired or demoted based on political patronage. *Silva*, 351 F.3d at 1047.

[5]The Court notes that this case is a somewhat unusual political patronage case because Plaintiff worked for Defendant Watson in the Madison County Tax Commissioner's office for 15 years before she was fired. *Cf., e.g., Terry*, 866 F.2d at 375 (immediately after election, new sheriff fired employees who had not supported his election). However, this fact is not sufficient to distinguish this case from other political patronage cases, *see infra*, because Plaintiff's Complaint can still be read to allege that the clerk job required political allegiance to Defendant Watson. According to the Complaint, Plaintiff met that requirement until 2004 because she did not manifest political allegiance to any opponent of Defendant Watson's until then.

requirement for effective performance of the public office involved.[6] *Elrod*, 427 U.S. at 346; *Branti*, 445 U.S. at 518; *Terry*, 866 F.2d at 377. Although the Eleventh Circuit has concluded that political loyalty to a sheriff is an appropriate requirement for effective performance of a deputy sheriff, *see Terry*, 866 F.2d at 377, it has not been established that political loyalty to an individual tax commissioner is an appropriate requirement for the effective job performance of a clerk in the tax commissioner's office. *Cf. Terry*, 866 F.2d at 377-78 (noting that political loyalty to sheriff may not be appropriate job requirement of clerks, investigators, dispatchers, jailers, and process servers because such positions "traditionally revolve around limited objectives and defined duties" and do not involve insuring that sheriff's goals and policies are implemented). Such a determination "depends on the actual responsibilities" of the position and the relationship of the position to the tax commissioner. Here, there is nothing in the record at this point to suggest that political loyalty to the Tax Commissioner is a reasonably appropriate requirement for the effective performance of the clerk job. Plaintiff alleged that she was a clerk in the Tax Commissioner's office and that she "was not in any decision making role within the department." A reasonable inference from these allegations is that Plaintiff's job had limited objectives and defined duties. Therefore, the Court cannot find that it appears

---

[6]It is important to note that in Georgia, if an employee is subject to a county merit system or civil service system, then the employer's authority to terminate him is limited to removal under the applicable system—even if the employer would otherwise be entitled to remove the employee for political reasons. *See Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1338 n.23 (11th Cir. 2003) (en banc).

beyond doubt that Plaintiff can prove no set of facts that would entitle her to relief, and the Court concludes that Plaintiff's Complaint adequately alleges a violation of her First Amendment right to freedom of association.[7] The Court further finds that a reasonable officer in Defendant Watson's position would understand that terminating a public employee solely because of her political affiliation was unlawful unless political affiliation is a reasonable requirement of the position and that political affiliation is not generally a reasonable requirement of a position that has limited objectives and defined duties.  *See Terry*, 866 F.2d at 378. Therefore, Defendant Watson is not entitled to qualified immunity on Plaintiff's First Amendment freedom of association claim at this time.

> b. *Substantive Due Process Claim*

Plaintiff further contends that her termination implicates substantive due process concerns.   If this claim relates to Plaintiff's contention that she was terminated in violation of her fundamental First Amendment rights, then it *is* actionable through the substantive component of the Due Process clause.  *See Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1563 (11th Cir.

---

[7]This is not to say that Defendants cannot satisfy the *Elrod-Branti* standard by showing that political loyalty *is* an appropriate job requirement of the clerk job.   However, Defendants have made no such showing at this point. Furthermore, even if political loyalty is not an appropriate job requirement of the clerk job, Defendants may be able to establish that Plaintiff's political affiliation was not the cause of Plaintiff's termination.  *See McCabe v. Sharrett*, 12 F.3d 1558, 1565 n.8 (11th Cir. 1994) (noting that causation analysis established in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 275 (1977) applies in *Elrod-Branti* cases).   For example, Defendants may be able to show that Defendant Watson terminated Plaintiff because Plaintiff's acts disrupted the office dynamics and destroyed a close working relationship.   However, the Court cannot presume such facts.

1995).  That claim is addressed *supra*.  However, to the extent that Plaintiff attempts to assert a separate substantive due process claim based on her termination from public employment for improper or pretextual reasons unrelated to her First Amendment activities, such a claim does *not* implicate substantive due process concerns.[8]  *See McKinney v. Pate*, 20 F.3d 1550, 1556, 1560 (11th Cir. 1994) (en banc); *see also Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1539 (11th Cir. 1994).  That is because employment rights are state-created and thus not fundamental rights created by the Constitution which are subject to substantive due process protection.  *McKinney*, 20 F.3d at 1560.  Therefore, any substantive due process claim *not* based upon a violation of Plaintiff's First Amendment rights is dismissed.

  c. *Procedural Due Process Claim*

Plaintiff also claims that Defendant Watson denied Plaintiff her constitutional right to procedural due process.  To establish this claim, Plaintiff must first show that she had a protected property interest in her employment.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 571 (1972).  "State law determines whether a public employee has a property interest in [her] job."  *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991).  Generally, a public employee has a protected property interest in continued employment if the employee can only be fired for cause—if state law or local ordinance limits the power of the employer to dismiss the employee.  *Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999).

---

[8]From the Complaint, the Court cannot find that Plaintiff has alleged any violation of a *fundamental* right other than her First Amendment rights.

12

In determining whether a particular employee can only be fired for cause, the courts look to contract provisions, rules, or mutually explicit understandings that support a claim of entitlement. *See Warren*, 927 F.2d at 562. Plaintiff alleges that she was an employee covered by a policy under which she could only be terminated for cause.[9] Therefore, the Court finds that Plaintiff has sufficiently alleged a protected property interest in her continued employment.

The next question is whether Plaintiff was deprived of her property interest without due process of law. Plaintiff alleges that she was fired without cause, that she was given neither notice nor an opportunity to be heard prior to her termination, and that she was not given any post-termination hearing. This is sufficient to state a procedural due process claim. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (noting that public employee with property interest in continued employment is entitled, prior to termination, "to oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story").

Because it is clearly established that an employee with a protected property interest in continued employment may not be

---

[9] Plaintiff alleges two policies on this point: the Tax Commissioner's merit system policy and the Madison County merit system/dismissal policy. Defendants contend that Plaintiff's allegations are insufficient because Plaintiff does not make any allegations specifically describing the policies that applied to her, because Plaintiff does not specifically allege that the Tax Commissioner actually promulgated a merit system policy, and because Plaintiff does not use the magic words "for cause" in her allegations. However, it is reasonable to gather from Plaintiff's allegations that Plaintiff is alleging that she could only be terminated for cause based on one or more policies that applied to her. At this point, Defendants have pointed to nothing that would determine the issue as a matter of law.

13

terminated without due process of law, *see id.*, the Court finds that Defendant Watson is not entitled to qualified immunity on Plaintiff's procedural due process claim at this time.[10]

*2. Claims Against Watson in her Official Capacity*

In addition to her individual capacity claims against Defendant Watson, Plaintiff also makes § 1983[11] and ADEA claims against Defendant Watson in her official capacity. Defendant Watson contends that she should be considered an "arm of the State" and that these claims are barred by the Eleventh Amendment. In the alternative, Defendant Watson argues that Plaintiff did not sufficiently allege a policy or custom to establish liability on these claims.

*a. Is Madison County Tax Commissioner an "Arm of the State"?*

The Eleventh Amendment bars suits brought in federal court when an "arm of the State" is sued, unless the arm of the State consents to suit or waives its immunity. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding that ADEA claims against states are barred by Eleventh Amendment immunity); *Miller v. King*, 384 F.3d 1248, 1259 (11th Cir. 2004) (noting that § 1983 actions against arm of the State are barred because of Eleventh Amendment immunity). To receive Eleventh Amendment immunity, "a defendant need not be labeled a

---

[10]This is not to say that Defendant Watson would not be entitled to qualified immunity on a motion for summary judgment if, based on the undisputed facts surrounding the application of the policies to Plaintiff's employment (including the determination of whether the policies applied to Plaintiff), it becomes clear that no reasonable officer in Defendant Watson's position would have understood that her conduct in terminating Plaintiff was unlawful under the circumstances.

[11]As discussed *supra*, Plaintiff has sufficiently alleged a violation of her First Amendment and procedural due process rights.

'state officer' or 'state official,' but instead need only be acting as an 'arm of the State.'" *Manders*, 338 F.3d at 1308.  To determine whether an entity is an "arm of the State" for Eleventh Amendment purposes, the following four factors are considered: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309.  Whether a defendant is an "arm of the State" is assessed in light of the particular function she was performing when taking the challenged action.  *Id.* at 1308.  In *Manders*, the Eleventh Circuit found that a Georgia county sheriff was an "arm of the State" when establishing his use of force policy in county jails because his duties and functions were "derived directly from the State, performed for the State, and controlled by the State."  *Id.* at 1328.  The Eleventh Circuit further found that the State "exercised its managerial prerogative" to control a number of aspects of the sheriff's office—incarcerating state offenders in county jails under the sheriff's charge; controlling the sheriff's duties and training the sheriff in those duties; precluding county control over sheriffs; and paying for the sheriff's training and discipline.  *Id.*  The Eleventh Circuit also found that both county and state funds were indirectly implicated by an adverse judgment against the sheriff.  *Id.* at 1329.

The particular function at issue in the instant case is Defendant Watson's personnel decision regarding Plaintiff's employment.  Defendant Watson contends that she is an "arm of the State" with regard to that personnel decision and that she has not consented to suit or waived any immunity with regard to this action.

15

Here, like the office of county sheriff analyzed in *Manders*, the office of county tax commissioner is an elected constitutional office. Ga. Const. art. IX § I ¶ III. The Tax Commissioner's office is not a division of Madison County or its governing authority—it is a separate office. *See id.*; Ga. Const. art. IX § II ¶ I. The Georgia legislature determines the duties of a county tax commissioner. *See* 1927 Ga. Laws 623 (consolidating offices of Madison County tax commissioner and tax collector into office of Tax Commissioner of Madison County). However, the tax commissioner's duties are not performed solely for the State or controlled exclusively by the State—rather, the tax commissioner's duties include both state functions and county functions to be performed within the tax commissioner's county. *See, e.g.,* O.C.G.A. § 48-5-127 (requiring tax commissioner to collect and pay over certain state taxes to state tax commissioner and to collect and pay over county taxes to county). Although the State retains control over a number of the tax commissioner's functions, *see, e.g.*, O.C.G.A. § 48-5-145 (providing that Governor may remove tax commissioner who fails in his duties), some of the tax commissioner's functions and duties are performed for and subject to control by the *county*. *See* O.C.G.A. § 48-5-126 (providing that county governing authority may appoint someone else to collect county taxes if county tax commissioner fails to give satisfactory bond); O.C.G.A. § 48-5-140 (granting county governing authority power to suspend county tax commissioner for malpractice).

With regard to the particular function at issue in this case—personnel administration—it is clear that the State makes a distinction between county employees and employees of elected county

officials. *See* Ga. Const. art. IX § II ¶ I(c)(1); *Mobley v. Polk County*, 242 Ga. 798, 801, 251 S.E.2d 538, 541 (1979). Therefore, unless the tax commissioner's employees are subject to the county's merit system, it is the tax commissioner and not the county that defines certain work regulations for the tax commissioner's employees. *See Mobley*, 242 Ga. at 802; 251 S.E.2d at 541. However, that does not mean that the county tax commissioner's administration of personnel is necessarily a *state* function. Although State law provides each county tax commissioner with the authority to manage her own personnel, the State appears to exercise little control over the tax commissioner's use of that authority, particularly when compared with the State's exercise of "managerial prerogative" with regard to a sheriff's use of force policies in the county jails. *See Manders*, 338 F.3d at 1328 (noting that State incarcerates state offenders in county jails under sheriff's charge, controls sheriff's duties with regard to those state offenders, precludes county control over sheriffs, and pays for sheriff's training).

As for funding, pursuant to State law, a county tax commissioner's office expenses, including personnel expenses, are funded by the county and not the State.[12]  *See* O.C.G.A. § 48-5-183. In Madison County, the tax commissioner has the authority to set salaries for her employees, but this authority is limited to the budget provided by Madison County—the Madison County governing

---

[12]The State sets the method and amount of compensation for each county tax commissioner, *see* 1965 Ga. Laws 3068 § 1; O.C.G.A. § 48-5-183, but the source of these funds is the county. *Id.* And while the State requires that county tax commissioners attend training on county taxation, this training is funded by the tax commissioner's own county rather than the State. *See* O.C.G.A. § 48-5-126.1.

authority has the power to determine how much money the tax commissioner receives for this purpose.  1985 Ga. Laws 4770, 4772 § 2; *see also Boswell v. Bramlett*, 274 Ga. 50, 52, 549 S.E.2d 100, 102 (2001) (discussing county's role in superior court clerk's budget).  With regard to judgments arising from personnel decisions, it appears that a county tax commissioner is responsible for such judgments against her in her official capacity and that the funds would come from her budget and not from the State.  *Cf. Williams v. Roberts*, 904 F.2d 634, 636 (11th Cir. 1990) (affirming, in § 1983 action stemming from termination of employee in violation of First Amendment, judgment against county tax commissioner in his official capacity).  While the county may not technically be liable for such a judgment, as a practical matter the tax commissioner would have to recoup that money somewhere and would therefore need to seek additional funds from the county, which provides the funding for her office.

Taking all of these factors together, the Court cannot conclude that the Madison County Tax Commissioner wears a "state hat" when she makes personnel decisions for her office.  Therefore, the Court finds, for purposes of the Motion to Dismiss, that Defendant Watson is not an "arm of the State" when making personnel decisions for her office.[13]  *See Williams*, 904 F.2d at 636 (permitting § 1983 action

---

[13]Even if the *Manders* factors discussed *supra* did tilt more in favor of Defendant Watson, there is one more matter regarding the County's control over the personnel decision at issue in this case which militates against a finding that Defendant Watson is an "arm of the State": Plaintiff alleges that she was covered by the County's merit system of employment and that the County therefore had the final word on her termination. Specifically, Plaintiff alleges that she was employed by Defendant County, that Defendant County had in place a merit system of employment for its employees, that she was covered by certain personnel policies of Defendant

based on personnel decision against county tax commissioner in his official capacity).

   b. Did Plaintiff Sufficiently Allege Policy or Custom?

   Defendant Watson contends that even if she is not considered an "arm of the State" when making personnel decisions for her office and is therefore not entitled to Eleventh Amendment immunity in this case, Plaintiff's Complaint does not sufficiently allege any policy or custom of the Madison County Tax Commissioner which caused her alleged injuries, so Plaintiff's § 1983 claims against Defendant Watson in her official capacity must be dismissed.  It is true that a local government entity may not be held liable under § 1983 solely for the acts of its employees—§ 1983 liability must be predicated upon the acts of the *entity*.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Monell v. New York City Dep't of Soc. Servs.*, 436

---

County, that she was entitled to appeal her termination to Defendant County, and that the County denied her appeal. A logical inference from these allegations is that Plaintiff was covered by a merit system under which the County and not Defendant Watson had the final word on Plaintiff's termination.  If Plaintiff can prove that she was covered by such a merit system, then Defendant Watson did not have unfettered discretion to terminate her—rather, the County, or its personnel board, would have the final word on this matter. *See Tax Comm'r of Fulton County v. Williams*, 267 Ga. App. 139, 142, 598 S.E.2d 862, 864 (2004) (in county where tax commissioner's employees are under county merit system by constitutional authorization, tax commissioner does not have unfettered discretion to impose any disciplinary action he chooses). A county officer's employees may be covered under the county's merit system by constitutional authorization or pursuant to statute. *See Gwinnett County v. Yates*, 265 Ga. 504, 505, 458 S.E.2d 791, 793 (1995). For example, a county officer's employees are covered under the county merit system if the county officer seeks coverage by written application to the county governing authority and the county governing authority passes appropriate ordinance or resolution extending coverage of the merit system to those employees. *Id.* at 507, 458 S.E.2d at 794; *see also* O.C.G.A. § 36-1-21.  Defendants have pointed to nothing that would allow the Court to conclude at this point that Plaintiff was not covered by the county merit policy.  Therefore, it does not appear beyond doubt that Plaintiff will be unable to prove that Defendant Watson ceded some of her authority over her personnel to Madison County.

U.S. 658, 694 (1978). Therefore, for a local government entity to be held liable under § 1983, the deprivation at issue must have taken place pursuant to a policy or custom of the local government entity. *Monell*, 436 U.S. at 694. A single decision by a person with final decision making policy—someone whose decisions may fairly be said to represent official policy—can constitute a policy or custom giving rise to liability. *Pembaur*, 475 U.S. at 480. In this case, Plaintiff alleges that Defendant Watson made the decision to terminate her. She also alleges that Defendant Watson was a final policymaker for the Tax Commissioner's office. Defendants have pointed to nothing that would counsel a different conclusion—rather, the bulk of Defendant's argument urges a conclusion that state and local law makes Defendant Watson a final policymaker for the Tax Commissioner's office. For these reasons, the Court finds that Plaintiff has alleged sufficient facts amounting to a policy or custom by a final policymaker and therefore declines to dismiss Plaintiff's claims against Defendant Watson in her official capacity at this time.

*3. Claims Against Madison County*

Plaintiff also makes § 1983 and ADEA claims against Madison County.[14] Defendants contend that Madison County was not Plaintiff's "employer" within the meaning of the ADEA and that Defendant County cannot be held liable under § 1983 for Defendant Watson's actions.

---

[14]Although states and "arms of the State" generally possess immunity from suit, that immunity does not extend to counties. *Northern Ins. Co. of New York v. Chatham County, Ga.*, No. 04-1618, 2006 WL 1071413, at *4 (U.S. April 25, 2006) (discussing residual or constitutional sovereign immunity); *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231 (11th Cir. 2000) (discussing Eleventh Amendment immunity).

As discussed *supra*, under Georgia law, a county tax commissioner's office is an entity separate and distinct from the county, and state law distinguishes between county employees and employees of elected county officials. *See* Ga. Const. art. IX § II ¶ I(c)(1); *Mobley*, 242 Ga. at 801, 251 S.E.2d at 541.  In general, an employee of a county tax commissioner is an employee of *that official* and not the county.  *Id.* at 802, 251 S.E.2d at 541.

In this case, Plaintiff alleges, perhaps not as succinctly as she could have alleged, that she was covered by certain Madison County personnel policies and the County's merit system, that she was entitled to appeal her termination to the County, and that the County declined to hear her appeal.  A logical inference of these allegations is that Plaintiff was covered by a merit system under which the County had the authority to review Defendant Watson's decision to terminate Plaintiff.  If it were clear that such a delegation of authority could not be accomplished under Georgia law under any circumstances, then the Court would be required to disregard these allegations as unsupported conclusions of law. However, because it is possible under Georgia law for a tax commissioner to delegate some of her authority over personnel administration to the County, *see* O.C.G.A. § 36-1-21; *Tax Comm'r of Fulton County*, 267 Ga. App. at 142, 598 S.E.2d at 864; *Yates*, 265 Ga. at 505, 458 S.E.2d at 793, the Court accepts Plaintiff's allegations as true for purposes of this Motion to Dismiss.[15]   The remaining

---

[15]It may be that Defendants can resolve this issue very simply on a motion for summary judgment by demonstrating that there is no genuine issue of material fact that Plaintiff was *not* covered by any such county merit system.  However, that is not the issue presently before the Court.

question, therefore, is what, if any, effect these allegations have on Plaintiff's ADEA and § 1983 claims.

a. Can Defendant County be Considered Plaintiff's "Employer"?

Under the ADEA, it is unlawful for an "employer" to discharge an individual because of her age. *See* 29 U.S.C. §§ 623, 630(b). In general, a county tax commissioner's office is an entity separate and distinct from the county, and the tax commissioner's employees are employees of that official and not the county. *See* Ga. Const. art. IX § II ¶ I(c)(1); *Mobley*, 242 Ga. at 802, 251 S.E.2d at 541. A tax commissioner's employees may, however, be covered under the county's merit system of employment. O.C.G.A. § 36-1-21. If the county tax commissioner's employees are so covered, then the tax commissioner does not have unfettered discretion to discipline her employees—rather, the county, or its personnel board, would have the authority to review the tax commissioner's decisions. *See Tax Comm'r of Fulton County*, 267 Ga. App. at 142, 598 S.E.2d at 864. Under such circumstances, the county could be considered an "employer" because it "exerts or shares control over the fundamental aspects of the employment relationships" of the tax commissioner's office or by virtue of an agency relationship. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc) (describing "single employer" test for governmental entities in Title VII context); *Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984) (discussing agency theory of "employer" in Title VII context). Because Plaintiff's Complaint alleges that the Madison County Tax Commissioner delegated control of some of her traditional employer rights—such as discipline or firing—it does not appear beyond doubt that Plaintiff will be unable to show that Madison

County had sufficient control over the Tax Commissioner's employees such that it can be considered Plaintiff's "employer" for ADEA purposes.[16] Therefore, Defendants' Motion to Dismiss Plaintiff's ADEA claim against Defendant County is denied.

   *b. Can the County be Liable Under § 1983 for the Termination?*

   As discussed *supra*, for a local government entity to be held liable under § 1983, the alleged deprivation must have taken place pursuant to a policy or custom of the local government entity. *Monell*, 436 U.S. at 694.  A county may only be held liable under § 1983 for acts for which it was "actually responsible."  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). To show that a county is actually liable for an act by a government official, a plaintiff must (1) show that the county has authority and responsibility over the governmental function at issue and (2) identify those officials who speak with final policymaking authority for the county concerning the act.  *Id.* at 1330. Therefore, the first relevant question in this case is whether the County had authority and responsibility over the Tax Commissioner's decision to fire Plaintiff.  If Plaintiff was covered by the County's merit system as alleged, then the County, or its personnel board, did have authority and responsibility over this decision. *See Tax Comm'r of Fulton County*, 267 Ga. App. at 142, 598 S.E.2d at 864*; cf. Grech*, 335 F.3d at 1338 n.23 (noting that when Georgia sheriff's employees are subject to county merit system, sheriff's authority to terminate deputies is limited to removal under applicable civil service

---

[16]Whether a fact-specific inquiry regarding the circumstances and details of any delegation of this authority to the County would actually support such a theory is not the question currently before the Court.

system).  The next question is whether the Tax Commissioner was a final policymaker for the County concerning personnel decisions regarding the employees in her office.  To determine whether someone is a final policymaker for an entity, the courts look to "'state and local positive law' [and] 'custom and usage having the force of law.'"  *Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004) (quoting *McMillian v. Johnson,* 88 F.3d 1573, 1577 (11th Cir. 1996)). If, for example, it is the custom of a county to "rubber stamp" an officer's decisions without reviewing them, then that officer may be considered a final policymaker for the county—even if that officer is not technically a final policymaker.  *Cf. id.* at 1292-93.  In this case, as discussed *supra*, it is apparent that Defendant Watson was the final policymaker for her office.  In addition, if the County had authority and responsibility over Watson's employment decisions with regard to employees under its merit system but there was no opportunity for meaningful review of those decisions, then Watson may also fairly be considered a final policymaker for the county with regard to those decisions.  *See id.* at 1292-93.  Here, Plaintiff alleges that the County summarily denied her appeal without actually reviewing Defendant Watson's decision.  Therefore, it does not appear beyond doubt that Plaintiff will be unable to show that Madison County had authority over the employment decision at issue in this case and that Defendant Watson was a final policymaker for the County with regard to that decision.  Accordingly, Defendants' Motion to Dismiss Plaintiff's § 1983 claims against Defendant County is denied.

24

CONCLUSION

For the reasons discussed above, the Court grants Plaintiff's Motion to Amend Complaint.  The Court dismisses the following claims: (1) ADEA claim against Defendant Watson in her individual capacity, and (2) any substantive due process claim not based on the alleged violation of Plaintiff's First Amendment rights.  The following claims remain: (1) § 1983 claims (First Amendment and procedural due process) against Defendant Watson in her individual capacity, (2) ADEA claim against Defendant Watson in her official capacity, (3) § 1983 claims (First Amendment and procedural due process) against Defendant Watson in her official capacity, (4) ADEA claim against Defendant County, and (5) § 1983 claims (First Amendment and procedural due process) against Defendant County.

IT IS SO ORDERED, this 25th day of May, 2006.


S/Clay D. Land
                    CLAY D. LAND
              UNITED STATES DISTRICT JUDGE